**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| J.R. MERCER, a/n/f of | § | |
| HEATHER MERCER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-04-3454 |
| | § | |
| OTIS HARR, WAYNE LEY, | § | |
| JAN BLACK, JOSEPH ANDERSON, | § | |
| MARK WENDT, JIM KOCIAN, | § | |
| BRIAN BACICA, MIKE RASKA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

J.R. Mercer sued the principal of the middle school where his daughter, Heather, is a student, and the school district's trustees, alleging that they conspired to violate Heather's First Amendment rights by forbidding her to wear a t-shirt to school because of the writing on the shirt.  In subsequent pleadings, Mercer adds allegations that the defendants have a policy of student "interrogation" that violates the Fifth Amendment and a policy of conducting a prayer before school board meetings that violates the First Amendment's Establishment Clause.

The following motions are pending:

1.      Defendants have moved for summary judgment on Mercer's free speech and civil conspiracy claims and on the related request for declaratory judgment. (Docket Entry No. 6).

2.      Defendants have moved to dismiss Mercer's Establishment Clause and Fifth Amendment claims. (Docket Entry No. 16).

3.      Mercer has moved for summary judgment on the free speech, Establishment Clause, and Fifth Amendment claims.  (Docket Entry No. 4).

Based on the pleadings, the motions, the parties' submissions, and the applicable law, this court grants in part and denies in part defendants' motion to dismiss; denies Mercer's motion for summary judgment; and grants defendants' motion for summary judgment, for the reasons set out in detail below.  As a result of these rulings, the only claim remaining is the asserted Establishment Clause violation.  A hearing will be held on **August 19, 2005, at 2:00 p.m.,** to set the discovery and briefing schedule on Mercer's remaining claim.

## I.      Factual and Procedural Background

In 2004, Mercer's twelve-year-old daughter, Heather, attended Needville Middle School (NMS).  On April 29, 2004, the child wore a t-shirt to school with the following message:  "Somebody Went to HOOVER DAM And All I Got Was This 'DAM' Shirt." NMS Principal Otis Harr told Heather that she could not wear the t-shirt because it was inappropriate for school.  Heather changed into another t-shirt that she had brought to school. At Heather's request, Harr called her father and explained that the t-shirt violated the school's dress code.  That same day, Harr also wrote Mercer a letter stating that the shirt was inappropriate for school and violated the dress code.  Harr put a copy of the Needville Independent School District (NISD) dress code from the NMS Student/Parent Handbook in the letter.  The NISD dress code policy prohibits any clothing that "in the principal's judgment may reasonably be expected to cause disruption of or interference with normal

school operations," as well as clothing with pictures, emblems, or writings that "are lewd, offensive, vulgar, or obscene." (Docket Entry No. 6, Exhibit A-3). The next day, Friday, Heather returned to school wearing the same t-shirt, accompanied by her father. Mercer asked Harr if he had reconsidered his position on the t-shirt. Harr responded that his position remained firm and that Heather would have to change into an appropriate shirt or spend the day in in-school suspension ("ISS"). Mercer said that his daughter would not be spending the day in ISS, and the two left the school. Later that day, Harr wrote Mercer a second letter, pointing out that NISD's dress code prohibits clothing that is "lewd, offensive, vulgar, or obscene" or that, "in the principal's judgment, may reasonably be expected to interfere with normal school operation." Harr repeated that he found the t-shirt to be offensive and potentially disruptive in the classroom environment. (Docket No. 6, Exhibit A-2).

On May 3, 2004, the following Monday, Mercer again accompanied his daughter to school and again asked if Harr had reconsidered his view of the t-shirt. Harr had not. Mercer left the school with his daughter, who did not return for the rest of the week, despite notice from Harr that her absence would be considered unexcused.

Later that same day, May 3, Mercer attended a "Level II" grievance conference with the NISD Superintendent, Gary Gazaway. Under NISD Board policy, such a conference occurs when a "Level I" conference between a parent and the principal fails to resolve a complaint to the parent's satisfaction. After the "Level II" grievance conference, Gazaway upheld Harr's decision. On May 7, 2004, Gazaway wrote to Mercer explaining that the t-

shirt was inappropriate for school.  Gazaway included information about how Mercer could appeal his decision to a "Level III" hearing before the NISD Board of Trustees.

On May 10, 2004, the NISD Board held a Level III hearing with Mercer and his daughter both present.  Mercer alleges that the defendants opened the meeting by requiring his daughter, his attorney, and him to "recite prayers as part of their proceeding" before addressing Mercer's grievance.  (Docket Entry No. 9).  After this prayer, the Board listened to the arguments of Mercer's counsel and voted unanimously to deny the grievance and uphold Harr's and Gazaway's decisions.

After the Board of Trustees Level III meeting, Mercer sued Harr and the members of the NISD Board in state court, alleging that defendants violated and conspired to violate his daughter's free speech rights.[1]  Mercer also sought a declaratory judgment under Texas law as to the meaning of the words "Hoover Dam."  Defendants removed on the basis of federal question jurisdiction.  (Docket Entry No. 1).  In federal court, Mercer filed a document entitled "Supplement to First Amended Petition and Motion for Summary Judgment." (Docket Entry No. 4).  In this supplement, Mercer alleged that after the Board of Trustees hearing, his children have faced additional disciplinary actions, including "interrogations." He also alleged that since he filed this lawsuit, defendants have adopted a new "interrogation" policy stating that, "in the context of school discipline, students have no claim to the right not to incriminate themselves."  Mercer asserted that this policy violates

---

[1]     Mercer sued Needville Independent School District Trustees Wayne Ley, Jan Black, Joseph Anderson, Mark Wendt, Jim Kocian, Brian Bacica, and Mike Raska.

his children's Fifth Amendment right against self-incrimination.  He also alleged that defendants' policy of conducting prayers before Board meetings violated the Establishment Clause.  Mercer moved for summary judgment on his previously-pleaded free speech claim, as well as the newly-asserted Establishment Clause and Fifth Amendment claims that he alleged in his supplement.  (Docket Entry No. 9).

Defendants moved for summary judgment on Mercer's free speech and civil conspiracy claims and on his request for a declaratory judgment.  As an affirmative defense, defendants claimed official and professional immunity under state law.  (Docket Entry No. 6).  In addition, defendants moved to strike Mercer's supplemental pleading of the Fifth Amendment and Establishment Clause claims or, alternatively, to require him to file a more definite statement.  (Docket Entry No. 7).  While defendants' motion was pending, Mercer filed a "More Definite Statement," repeating his Establishment Clause and Fifth Amendment claims.  (Docket Entry No. 9).  Mercer also responded to defendants' summary judgment motion.  (Docket Entry No. 10).

This court previously granted the defendants' motion to strike Mercer's Supplement to First Amended Petition, but allowed Mercer to file an amended pleading.  (Docket Entry No. 13).  Defendants then moved to dismiss Mercer's Fifth Amendment and Establishment Clause claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  The motion to dismiss is based on the fact that Mercer sued defendants in their individual capacities, but complained only of official NISD

policies and sought injunctive and declaratory relief prohibiting those policies.  (Docket Entry No. 16).

This court examines Mercer's motion for summary judgment on his free speech claim;[2] defendants' motion for summary judgment on Mercer's free speech claim, conspiracy claim, and declaratory judgment action; and defendants' motion to dismiss Mercer's Fifth Amendment claim and Establishment Clause claim.

## II.    The Applicable Legal Standards

### A.    The Rule 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) dismissal is appropriate if there is no set of facts that could be proven consistent with the complaint's allegations that would entitle the plaintiff to relief.  *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Id.*  In order to avoid dismissal, however, a court need not "accept as true conclusory allegations or unwarranted deductions of fact."  *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2001).

In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the contents of the pleadings, with one important exception.  In *Collins*, 224 F.3d at 498–99, the

---

[2]    Because Mercer's original "Supplement to First Amended Petition" improperly asserted these two additional claims, this court treats Mercer's "Supplement" as a motion for summary judgment only on his free speech claim.

Fifth Circuit approved the district court's consideration of documents the defendant attached to a motion to dismiss.  In *Collins* and later in *Scanlan*, the Fifth Circuit made it clear that "such consideration is limited to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498–99).  Other courts approve the same practice, stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Venture Assocs. Corp v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1998); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994).

### B.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for

summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir. 2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson,* 477 U.S. at 255. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

### C.   The Qualified Immunity Standard

"Qualified immunity protects officials in the course of performance of their discretionary duties unless their conduct violates a 'clearly established [federal] statutory or constitutional right] of which a reasonable person would have known." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (alterations in original); *see also Anderson v. Creighton*, 483 U.S. 635, 637 (1987); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997); *Warnock v. Pecos County*, 116 F.3d 776, 781 (5th Cir. 1997).  To determine if qualified immunity applies, the district court must follow a two-step process.  First, the court must determine whether the plaintiff has asserted a violation of a clearly established constitutional or statutory right.  *See Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998); *Gutierrez*, 139 F.3d at 445 (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)); *Colston*, 130 F.3d at 99 (citing *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994)); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).  If an official has violated a person's federal civil rights, the second analytical step is to determine whether the official's actions were objectively reasonable.  *See Gutierrez*, 139 F.3d at 445; *Morin*, 77 F.3d at 120; *see also Anderson*, 483 U.S. at 639.

The issue in the second analytical step is "whether a reasonable person would have believed that his [or her] conduct conformed to the constitutional standard in light of the information available . . . and the clearly established law." *Goodson v. City of Corpus*

*Christi*, 202 F.3d 730, 736 (5th Cir. 2000). The objective reasonableness of the official's conduct is measured with reference to the law as it existed at the time of the conduct in question. *See Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). "The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a 'constitutional scholar.'" *Swyden*, 139 F.3d at 466 (quoting *Harlow*, 457 U.S. at 815–17). However, the contours of the right must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *See Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (citing *Anderson*, 483 U.S. at 639). "The qualified immunity defense 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

## III.   Analysis

### A.   The Free Speech Claim

Both Mercer and defendants have moved for summary judgment on the free speech claim. (Docket Entry No. 4). Mercer alleges that Harr and the NISD Board of Trustees violated and conspired to violate his daughter's First Amendment free speech rights by prohibiting her from wearing to school a t-shirt that reads, "Somebody Went to HOOVER DAM And All I Got Was This 'DAM' Shirt." In their summary judgment motion, defendants raise the affirmative defense of official or qualified immunity. To determine whether the defendants are entitled to such a defense, this court must first decide whether Mercer has stated a violation of a clearly-established constitutional right. *See Gutierrez*, 139

F.3d at 445; *Morin*, 77 F.3d at 120; *see also Anderson*, 483 U.S. at 639.  If defendants have not violated a clearly-established constitutional right, or have acted with objective reasonableness, defendants are entitled to immunity.

Heather Mercer's desire to wear a t-shirt that reads "Somebody Went to HOOVER DAM And All I Got Was This 'DAM' Shirt" is, as a matter of law, not entitled to constitutional protection.  Defendants did not violate a clearly-established constitutional right when they refused to allow the child to wear the shirt to middle school classes and defendants were objectively reasonable in applying the dress code to forbid Heather from wearing the t-shirt.

The First Amendment protects expressive conduct in addition to pure speech, but to be protected, expression must involve "an intent to convey a particularized message" that, given the circumstances, would most likely "be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 409–411 (1974).  In evaluating whether particular conduct implicates First Amendment protections, courts must ask whether "[a]n intent to convey a particularized message was present, and . . . [whether] the likelihood was great that the message would be understood by those who viewed it."  *Id*. at 410–11 (alterations in original).  Even if the communication or conduct is sufficiently expressive to warrant First Amendment protection, that protection also depends on the context in which it takes place. In the public school arena, the free expression rights of students are balanced by the corresponding interest of furthering the educational mission of schools.  In *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), which involved a

group of students  disciplined for wearing black armbands to protest the Vietnam War, the
Court characterized the school's action as a regulation of conduct "akin to pure speech," as
opposed to "regulation of the length of skirts or the type of clothing, to hair style, or
deportment." *Id.* at 507–08.  The Court then held that the school could not ban the armbands,
as there was "no evidence whatsoever of . . . interference, actual or nascent, with the schools'
work or of collision with the rights of other students to be secure and to be let alone." *Id.* at
508–09.  The  school officials had to show "facts which might reasonably have led [them]
to forecast substantial disruption of or material interference with school activities," which
they failed to do. *Id.* at 508, 514.  By contrast, in *Bethel School District No. 403 v. Fraser*,
478 U.S. 675 (1986), the Court considered a student who made a speech at a school assembly
using a sexual metaphor. *Id.* at 677.  The Supreme Court distinguished the "nondisruptive,
passive expression of a political viewpoint in *Tinker*" from the "offensively lewd and
indecent speech" of the plaintiff. *Id.* at 680, 685.  The Court held that the school's interest
in "teaching students the boundaries of socially appropriate behavior" gave it the right to
determine "what manner of speech in the classroom or in school assembly is inappropriate."
*Id.* at 681, 683.  "It was perfectly appropriate for the school to . . . make the point to the
pupils that vulgar speech and lewd conduct [are] wholly inconsistent with the 'fundamental
values' of public school education." *Id.* at 685–86.

    The Fifth Circuit applies these tests to measure restrictions on student expression in
schools,  balancing the First Amendment rights of students with the special need of educators

to maintain a safe and effective learning environment.[3]  In *Canady v. Bossier Parish School Board*, 240 F.3d 437 (5th Cir. 2001), the Fifth Circuit identified four categories of school regulations aimed at student speech, each reviewed under a different standard. These categories are: (1) school regulations directed at specific student viewpoints; (2) school regulations governing student expression involving lewd, vulgar, obscene or offensive speech; (3) school regulations governing student speech related to school-sponsored activities; and (4) school regulations that are viewpoint-neutral and fall into none of the previous three categories.  *Id.*, 240 F.3d at 441–44; *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 614–615 (5th Cir. 2004).  Under the second category, schools may ban offensive, lewd, or indecent speech regardless of its potential for disruption.  *Id.*

This court assumes, without deciding, that because this case involves a written message, it is properly viewed under the First Amendment analysis that begins with *Tinker*. It is unclear, however, that Heather's conduct in wearing this tourist souvenir from the Hoover Dam meets this threshold.  In *Blau v. Fort Thomas Public School District*, 401 F.3d 381 (6th Cir. 2005), the court upheld a middle school dress code that, among other restrictions, forbade shirts with writing or logos larger than a quarter, other than the school's "spirit wear."  The court held that the First Amendment does not protect vague and

---

[3]       *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) ("A school need not tolerate student speech that is inconsistent with its 'basic educational mission'' even though the government could not censor similar speech outside the school.") (*quoting Fraser*, 478 U.S. at 685)); *Canady*, 240 F.3d at 441 ("While certain forms of expressive conduct and speech are sheltered under the First Amendment, constitutional protection is not absolute, especially in the public school setting. Educators have an essential role in regulating school affairs and establishing appropriate standards of conduct.").

attenuated notions of expression, but required a showing "that the desired conduct (e.g., the desired clothing) can fairly be described as 'imbued with elements of communication,' . . . which 'convey[s] a particularized message' that will 'be understood by those who view[ ] it.'"  401 F.3d at 388 (quoting *Spence,* 418 U.S. at 411).  The right asserted is not the right to express a particularized message of fondness for the Hoover Dam.  Rather, the right asserted is Heather's right to wear to school clothing that she and her family choose.  The case law is clear that the First Amendment does not protect such vague and attenuated notions of expression as "self-expression through any and all clothing that a 12-year old may wish to wear on a given day." *Blau*, 401 F.3d at 390.

Even assuming that Heather's t-shirt conveyed a particularized message, the case law establishes that prohibiting her from wearing it to school violated no First Amendment right.  This case falls into the second of the categories recognized in *Canady*.  Under the second category, schools may ban offensive, lewd, or indecent speech, regardless of its potential for disruption.  The NISD dress code policy prohibits any clothing that "in the principal's judgment may reasonably be expected to cause disruption of or interference with normal school operations," as well as clothing with pictures, emblems, or writings that "are lewd, offensive, vulgar, or obscene."  (Docket Entry No. 6, Exhibit A-3).  Authorized by the district's dress code to make reasonable judgments about students' dress, Principal Harr found that Heather's t-shirt was offensive because "'dam' in the context of 'this dam shirt' is an inappropriate expletive."  (Docket Entry No. 6, Exhibit A-2).  This decision is consistent with the cases recognizing school officials' authority to prohibit students from

wearing clothing that is offensive.  In *Boroff v. Van Wert City Board of Education*, 220 F.3d 465 (6th Cir. 2000), the Sixth Circuit held that a high school principal did not violate a student's First Amendment rights by prohibiting a t-shirt promoting the "goth" rock artist Marilyn Manson and his eponymous band.  The t-shirt depicted a three-faced Jesus, the band's name, and the words, "See No Truth.  Hear No Truth.  Speak No Truth."  *Boroff*, 220 F.3d at 467.  The court found that the school principal could forbid the shirt under the school's dress code, which banned "offensive illustrations."  *Id*. at 467.  The court specifically found that the t-shirt was not perceived to "express any particular political or religious viewpoint," and that the principal's decision did not involve a restriction of viewpoint expression, which would garner the highest level of judicial scrutiny under *Tinker*. *Boroff*, 220 F.3d at 470–71.  In *Pyle v. South Hadley School Committee*, 861 F. Supp. 157 (D. Mass. 1994), a district court found that a school principal was constitutionally permitted to forbid students from wearing shirts that read, "Coed Naked Band: Do It To The Rhythm" and "See Dick Drink.  See Dick Drive.  See Dick Die.  Don't Be A Dick."  *Id.* at 161–162. In *Guiles ex rel. Lucas v. Marineau*, 349 F. Supp. 2d 871 (D.Vt. 2004), the court found that middle school officials did not violate the First Amendment when it required the student to change shirts or cover up images of drugs and alcohol, even though they appeared on a shirt that was critical of the incumbent president.  The cases in which courts did find First Amendment violations involved clothing expressing specific and clear political messages, singularly absent from Heather's souvenir t-shirt from the Hoover Dam.  In *Barber ex rel. Barber v. Dearborn Public Schools*, 286 F. Supp. 2d 847 (E.D. Mich. 2003), a student was

prohibited from wearing a shirt that displayed an image of the incumbent president with the caption "International Terrorist."  The school argued that this censorship was required because the shirt might offend certain students at the school.  *See Barber*, 286 F. Supp. 2d at 857.  The court rejected this argument, noting that the t-shirt was entitled to protection as a particularized expression of a political viewpoint, and that the school had not met the burden set by *Tinker* because it had not shown that the shirt was likely to cause disruption that would interfere with the school environment.  *See id.*; *see also Chambers v. Babbitt*, 145 F. Supp. 2d 1068, 1072 (D. Minn. 2001) (parents had "strong likelihood of success" in establishing that principal's decision to forbid student from wearing sweatshirt reading "Straight Pride" was unreasonable and unconstitutional); *Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096 (S.D. Cal. 2004) (plaintiff had stated a cognizable claim for violation of his First Amendment rights when school required him to change or leave school because his t-shirt read, "I will not accept what God has condemned" and "Homosexuality is shameful; Romans 1:27").

Mercer raises two primary arguments.  The first is to challenge the characterization of the t-shirt's writing as an "inappropriate expletive."  Citing dictionary definitions, Mercer argues that "dam t-shirt" is not offensive, lewd, or vulgar because a "dam" is not an expletive, but a barrier, usually for retaining water.  This argument fails.  The case law is clear that school administrators are permitted to consider more than the literal meaning of the words or images at issue.  *See Pyle*, 861 F. Supp. at 159 (school's authority to restrict clothing emblazoned with double entendre words, even when there is no immediate prospect

of disruption, does not offend the First Amendment; principal could permissibly prohibit shirts reading, "Coed Naked Band: Do It To The Rhythm" and "See Dick Drink.  See Dick Drive.  See Dick Die.  Don't Be A Dick.").  Given the homophonic nature of the word "dam," it was reasonable for the principal and Board to consider the t-shirt offensive.  The decision regarding "what manner of speech in the classroom . . . is appropriate properly rests with the school board." *Kuhlmeier*, 484 U.S. at 267, citing *Fraser*, 478 U.S. at 683.  The undisputed facts make it clear that as a matter of law, Harr and the Board did not violate a clearly-established constitutional right in determining that the t-shirt was offensive, and that their decision was an objectively reasonable application of the dress code, entitling them to qualified immunity.

Mercer's second argument is that the dress code itself is unconstitutionally vague.  This argument also fails.  Mercer has failed to allege or present facts that show that the code is so vague "that people of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926).  The dress code is readily available in the NMS Student/Parent Handbook.  Nothing in the record suggests that members of the school community have found its language to be unclear.

The dress code meets the requirements for enforcement.  *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001) (upholding mandatory uniform policy against First Amendment challenge).  The code identifies the interests it is intended to further. The dress code was established "to teach grooming and hygiene, instill discipline, prevent disruption, avoid safety hazards, and teach respect for authority."  (Docket Entry No. 6,

Exhibit A-3).  These interests are unrelated to the suppression of student expression.  *See Littlefield*, 268 F.3d at 286–287 (uniform policy was sufficiently related to interest in improving schools and impinged on students' First Amendment rights no more than necessary); *Blau*, 401 F.3d at 391 (dress code furthers important governmental interests and exists in spite of, not because of, its impact on free speech activities).

Neither the language of the dress code nor its application in this case offends the First Amendment.  *See Broussard by Lord v. Sch. Bd. of City of Norfolk*, 801 F. Supp. 1526, 1529 (E.D. Va. 1992) (upholding against constitutional challenge a dress code that allowed school to prohibit clothing that "distracts other students or that interferes with the classroom participation of other students;" principal could permissibly prohibit shirt reading, "Drugs Suck!"); *Brandt*, 326 F. Supp. 2d 916 (middle school officials did not infringe gifted students' free speech rights by prohibiting shirts containing a caricature of a dim-witted boy on the front and the word "Gifties" on the back as a threat to the maintenance of appropriate discipline); *see also Burnside v. Byars*, 363 F.2d 744, 748 (5th Cir. 1966) (school officials must have a wide latitude of discretion in formulating reasonable regulations pertaining to school discipline; court should not consider wisdom of rules, but merely their reasonableness);  *Long v. Bd. of Educ. of Jefferson County*, 121 F. Supp. 2d 621 (W.D. Ky. 2000) (dress code prohibiting apparel such as untucked shirts, clothing with logos and text, and denim to prevent  gang-related disruptions in school did not violate First Amendment).

This court finds no genuine issue of disputed fact material to Mercer's free speech

claim against the defendants.  This court grants defendants' motion for summary judgment, and denies Mercer's motion, dismissing the free speech claim with prejudice.

### B.    The Conspiracy Claim

Mercer's original and first amended petition filed in state court contain a claim of civil conspiracy.  This court will consider Mercer's claim under both state and federal law.

42 U.S.C. § 1985(3) provides, in pertinent part, as follows:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving,  either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

"Section 1985(3) . . . creates no rights.  It is purely a remedial statute, providing a civil cause of action when some otherwise defined federal right — to equal protection of the laws or equal privileges and immunities under the laws — is breached by a conspiracy in the manner defined by the section."  *Great Am. Fed. S&L Ass'n v. Novotny*, 442 U.S. 366, 376 (1979).  Mercer must allege and present facts showing that defendants violated a federal right and were motivated by some type of class-based invidiously discriminatory animus.  *See Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 (1993).  Mercer has made no showing that the defendants' actions

constituted a violation of the First Amendment, or that defendants were motivated by any discriminatory animus.  The section 1985 conspiracy claim fails as a matter of law.

In their motion for summary judgment, the defendants construe Mercer's claim as a civil conspiracy claim under state common law.  The elements of this cause of action include an unlawful, overt act, *see Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005), which Mercer has failed to show as to his First Amendment claim.

In addition, defendants have shown that, as a matter of law, they are professionally immune from liability, under section 22.0511 of the Texas Education Code.  (Docket Entry No. 6).  Mercer argues in his response that this defense is not available to the defendants in federal court.  (Docket Entry No. 10).  This argument is incorrect.  *See Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992).  Under section 22.0511, "a professional employee of a school district is not personally liable for any act . . . within the scope of the duties of the employee's position of employment and that involves the exercise of judgment and discretion on the part of the employee."  TEX. EDUC. CODE ANN. § 22.0511(a) (Vernon 2002).  Defendants have submitted uncontroverted summary judgment evidence that they are school officials, authorized by the NISD dress code policy to exercise discretion in judging what clothing "may reasonably be expected to cause disruption or interference with normal school operations." (Docket Entry No. 6, Exhibit A-3).  Defendants are entitled to the defense of professional immunity as to the civil conspiracy claim raised under Texas law.

### C.    The Declaratory Judgment Action

In his pleadings, Mercer asks the court to issue a declaratory judgment as to a variety of points, including: (1) the definition of "Hoover Dam"; (2) that the Hoover Dam is a national landmark and that therefore the words "Hoover Dam" on a t-shirt cannot be considered offensive; (3) that the words "Hoover Dam" are not ambiguous or offensive; (4) that the defendants' actions regarding Heather and her t-shirt  were motivated by personal animus against her; and (5) that the NISD dress code is void for vagueness.  (Docket Entry No. 1, Exh. 2).  In their motion for summary judgment on Mercer's declaratory judgment action, defendants argue that Mercer is improperly invoking declaratory judgment.  Although the claim for declaratory judgment was first brought in state court, the removal to federal court causes the claim to be viewed as brought under the federal Declaratory Judgment Act. *Toops v. United States Fidelity & Guar. Co.*, 871 F. Supp. 284, 287 n.2 (S.D. Tex. 1995), *rev'd on other grounds sub nom. Toops v. Gulf Coast Marine Inc*., 72 F.3d 483 (5th Cir. 1996)).  Most of the topics on which Mercer seeks declaratory judgment are either not suited or necessary for such treatment or have been rejected on the merits.  A declaratory judgment is not necessary to recognize dictionary definitions or the status of the Hoover Dam as a landmark.  And, as defendants point out in their motion, the summary judgment evidence demonstrates that Principal Harr, Superintendent Gazaway, and the NISD Board of Trustees were concerned about the offensiveness of the phrase, ". . . And All I Got Was This 'DAM' Shirt," because they believed that in context, the shirt used a word that would be understood as an offensive expletive.  A declaratory judgment on the definition of the words "Hoover Dam"  would not address the words and phrase at issue in this case.  The other bases for

declaratory relief that Mercer identifies have been rejected on the merits.  This court grants defendants' motion for summary judgment as to Mercer's request for declaratory judgment.

### D.    The Establishment Clause and Fifth Amendment Claims

In their motion to dismiss, defendants argue that Mercer cannot state a claim for relief for violation of the Establishment Clause or the Fifth Amendment against them in their individual capacities, and that these claims should be dismissed with prejudice.  Mercer did not specify in his most recent pleading whether he seeks relief against the defendants in their official or individual capacities.  While Mercer did ask for damages in his original state court petition "against all the Defendants both jointly and severally from their individual estates and resources," his First Amended Petition only requests damages.  (Docket Entry No. 1, Exhibit 2).  Under 42 U.S.C. § 1983, a plaintiff is entitled to recover damages against a government official in his individual capacity for actions that the official takes under color of state law that deprive the plaintiff of a federal right.[4]  See *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Mercer appears to seek damages for specific actions that the defendants took in their official capacities as school officers, that he alleges violate the Establishment Clause and the Fifth Amendment.

Mercer has alleged that defendants required him, his daughter, and his attorney to participate in the recitation of a prayer invoking the name of Jesus before the "Level III" grievance hearing on the t-shirt could proceed.  The Establishment Clause "guarantees at a

---

[4]       Mercer mysteriously makes no mention of 42 U.S.C. § 1983 in any of his federal court filings.

minimum that a government may not coerce anyone to support or participate in religion or its exercise." *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984). The Supreme Court requires courts to examine with care prayers in public school settings. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000); *Lee v. Weisman*, 505 U.S. 577, 587 (1992). At this stage, this court cannot say that there is no set of facts that would entitle Mercer to relief as to his allegation regarding the prayer at the school board meeting. The defendants' motion to dismiss with respect to the Establishment Clause claim is denied, without prejudice to summary judgment challenges to the claim.

Mercer has also alleged that after he filed this lawsuit, defendants adopted a new policy establishing that, "in the context of school discipline, students have no claim to the right not to incriminate themselves." (Docket Entry No. 9). Mercer has not alleged any facts that, if proven, would show that this disciplinary policy has violated his children's Fifth Amendment rights. The Fifth Amendment applies only "when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States,* 425 U.S. 391, 408 (1976); *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981). Generally, the Fifth Amendment has been interpreted to mean that a person has the privilege not to answer questions by government officers in civil or criminal proceedings, whether formal or informal, if these questions may incriminate him in a subsequent criminal proceeding. *See Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)); *In re Grand Jury Proceedings*, 532 F.2d 404, 406 (5th Cir. 1976); *see also Mahoney v. Kesery*, 976 F.2d 1054, 1061–62 (7th Cir. 1992); *Wilkins v. May*, 872 F.2d 190,

194 (7th Cir. 1989) ("The Fifth Amendment does not forbid the forcible extraction of information but only the use of information so extracted as evidence in a criminal case—otherwise immunity statutes would be unconstitutional."); *Weaver v. Brenner*, 40 F.3d 527, 534–35 (2d Cir.1994).  Mercer has failed to plead facts that, if proven, would show a Fifth Amendment violation.  Furthermore, Mercer has repeatedly failed to plead this Fifth Amendment claim properly, despite having a number of opportunities throughout this suit. When Mercer attempted to assert this claim in his "Supplement to First Amended Petition," this court was entitled to deny Mercer leave to add the claim because the facts supporting the claim were known before the suit was filed.  (Docket Entry No. 4).  *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993) (holding that denial of leave to amend was proper when the facts underlying the new claim were known before the action was filed but leave to amend was not sought until after the defendant sought summary judgment).  Because Mercer asserted the claim before the defendants moved for summary judgment, this court granted Mercer leave to file a supplemental pleading.  Nevertheless, Mercer has failed to allege a set of facts in any of his state or federal pleadings that would entitle him to relief. Such a failure is one of several factors a court may consider when deciding whether to grant leave to file an amended pleading under Rule 15.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment can result in denial of leave to amend); *Wimm*, 3 F.3d 137, 139.

This court grants defendants' motion to dismiss as to the Fifth Amendment claim, and denies Mercer leave to amend as futile.

## IV.   Conclusion

This court grants defendants' summary judgment motion as to the First Amendment free speech and conspiracy claims; denies plaintiff's summary judgment motion; denies defendants' motion to dismiss Mercer's Establishment Clause claim; and grants defendants' motion to dismiss Mercer's Fifth Amendment claim.  A status conference will be held on **August 19, 2005, at 2:00 p.m.,** to set a discovery and briefing schedule on the only remaining issue in this case.

SIGNED on August 2, 2005.

Lee H. Rosenthal
United States District Judge